**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-1818

JUMP ROPE SYSTEMS, LLC,

    Plaintiff,

v.

SMITH VENTURES, LTD.,

    Defendant.

---

### COMPLAINT AND JURY DEMAND

---

Plaintiff Jump Rope Systems, LLC ("JRS") alleges the following for its complaint of patent infringement and common law conversion against Defendant Smith Ventures, Ltd. ("Smith"):

### NATURE OF THE ACTION

1. This is an action for patent infringement arising under the laws of the United States, Title 35, Section 271 of the United States Code, *et seq.* (the "Federal Patent Statute"), and common law conversion, seeking damages and injunctive and other relief. After years of intensive research and development, JRS developed the first duel-bearing shaft technology in a jump rope handle coupled with pivoting-eye technology in the handle-cable coupling. Previously, conventional jump ropes' constructional form limited the rate at which the cable could be spun. Aspects of this problem included the level of resistance within the handle, the closeness or distance of the cable from the handle, and the failure to allow the cable to swivel or pivot during rotation. JRS solved this problem by developing a jump rope handle that contains a bearing element that permits a shaft to more easily rotate, the shaft extending from the handle an

optimal distance, and a cable pivot at the end of the shaft that allows the cable to pivot and swivel.

2. In May 2012, Defendant Smith licensed the patented technology from Mr. Paul Borth, one of the patents' inventors and co-owner of JRS. As part of the terms of the license agreement, Mr. Borth provided Smith his mechanical die used for injection molding for the term of the license. Defendant used Mr. Borth's die to manufacture jump rope handles that incorporated the patented technology.

3. After over three years, Smith terminated its license for the patented technology but has refused to cease selling infringing products or return the die to Mr. Borth. JRS is thus forced to bring this lawsuit to protect its investment, the resulting hard-earned intellectual property rights, and the die still in Smith's possession.

## THE PARTIES

4. JRS is a Colorado corporation with its principal place of business at 500 Front Street, Louisville, Colorado 80027. JRS is a leading developer of speed jump technology and jump rope handles in the United States. Its owners have a combined 43 years of experience in this industry. JRS is the owner by assignment of the patents-in-suit.

5. Smith is a Colorado corporation with its principal place of business at 13333 East 37th Avenue, Denver, Colorado 80239.

## JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Federal Patent Statute.

7. This Court has personal jurisdiction over Defendant Smith because Smith is incorporated in the State of Colorado and maintains its principle place of business in the State of Colorado.

8. This Court has supplemental jurisdiction over the state law and other claims herein, pursuant to 28 U.S.C. § 1367, arising from and involving the same operative facts and circumstances.

9. Venue is proper in this Judicial District under 28 U.S.C §§ 1391 and 1400(b) at least because Defendant Smith is incorporated in the State of Colorado, Smith transacts business in this Judicial District, and Smith has committed and continues to commit acts of patent infringement and the act of conversion in this Judicial District as alleged herein.

## THE PATENTS IN SUIT

10. United States Patent Number 7,789,809 (the " '809 Patent"), entitled "Jump Rope System," was duly and lawfully issued by the United States Patent and Trademark Office ("PTO") on September 7, 2010. JRS is the owner by assignment of the entire right, title, and interest in and to the '809 patent, including the sole and undivided right to sue for infringement. Exhibit 1 is a true and correct copy of the '809 Patent.

11. The '809 Patent describes and claims, among other things, a jump rope comprising handles that contain bearings that permit a shaft to easily rotate. The shaft extending from the handle an optimal distance, and a cable connected to a ball element at the end of the shaft that allows the cable to pivot and swivel.

12. United States Patent Number 8,136,208 (the " '208 Patent"), entitled "Handle System" was duly and lawfully issued by the PTO on March 20, 2012. JRS is the owner by

assignment of the entire right, title, and interest in and to the '208 Patent, including the sole and undivided right to sue for infringement. Exhibit 2 is a true and correct copy of the '208 Patent.

13. The '208 Patent describes and claims, among other things, a jump rope handle that contain bearings that permits a shaft to easily rotate. The shaft extending from the handle an optimal distance with a ball element at the end of the shaft that pivots and swivels.

## BACKGROUND OF THE DISPUTE

### Termination of Patent License Agreement and Conversion

14. On May 18, 2012, inventor Mr. Borth and Smith entered into a patent license agreement ("License Agreement") for the technology patented in the '809 Patent and the '208 Patent.

15. As part of the License Agreement, Mr. Borth provided to Smith his die that is used to mold jump rope handles incorporating the patented technology. The License Agreement allowed Smith to use Mr. Borth's die during the term of the License Agreement.

16. The License Agreement required royalty payments be paid by Smith to Mr. Borth on a quarterly basis. Specifically, a quarterly royalty payment for licensed products sold by Smith during the months of July 2015, August 2015, and September 2015 was due to Mr. Borth on October 31, 2015.

17. In a September 25, 2015 email to Smith's CEO, Mr. Borth noted Smith's untimely royalty payments in the past and expressed his expectation that the up-coming payment be made by the October 31, 2015 deadline.

18. On November 4, 2015, after not receiving the required royalty payment, Mr. Borth, per the License Agreement procedures, emailed Defendant notifying it that it had breached the License Agreement and had thirty (30) days to cure the breach.

19. On December 4, 2015, Smith had not cured its breach and continued to refuse payment to Mr. Borth for the earned royalties. As a result, Smith terminated the License Agreement and a one hundred and eighty (180) day period commenced, per the License Agreement, that allowed Smith to sell off its inventory of licensed jump ropes it had on hand.

20. Smith, however, as of December 4, 2015, was no longer authorized to continuing using Mr. Borth's die to manufacture additional jump rope handles.

21. On December 10, 2015, Mr. Borth notified Smith that he would stop by Smith's place of business to retrieve the die. When he did, Smith's owner told him, "That's not going to happen today." Later that day, Smith's CEO claimed that he was not aware of the location of the die and that it would not be available for Mr. Borth to retrieve.

22. The next day, Mr. Borth insisted that Smith immediately stop using the die and return it to him because Smith's continued use was no longer authorized by the License Agreement. Mr. Borth offered to again stop by Smith's place of business to retrieve the die.

23. Smith refused to return the die and proposed letting it continue to use the die for an additional three weeks. Mr. Borth rejected that offer.

24. On December 15, 2015, Mr. Borth offered to again stop by Smith's place of business to retrieve the die. That same day, Smith's CEO responded by stating that he had not even spoken to the Director of Operations as to the status of the die, therefore, the die would not be available to Mr. Borth to pick up.

25. Smith continues to improperly possess Mr. Borth's die.

26. On December 21, 2015, Smith issued a check to Mr. Borth for the unpaid royalties and improperly claimed that cashing of the check would cure Smith's breach and that the License Agreement would no longer be terminated but rather be in force. Mr. Borth objected

to these improper conditions and did not cash the check. On January 29, 2016, Smith stopped payment on the check.

### Defendant's Infringing Product

27. Smith makes, uses, sells, offers for sale, imports, or provides speed jump ropes, including its RAGE R1 Speed Rope that is sells through its RAGE Fitness line of products.

28. Smith sells its R1 Speed Rope through at least its website www.ragefitness.com, through Amazon.com, through Dick's Sporting Goods stores and its website www.dickssportinggoods.com, and through Sports Authority stores and its website www.sportsauthority.com.

29. The R1 Speed Rope is marketed as "the world's fastest speed rope" with "technically superior speed bearings to ensure fluid and precise movement at high speeds."



Exhibit 3 is a true and correct copy of Smith's offer for sale of the RAGE R1 Speed Rope from July 15, 2016 on its www.ragefitness.com website.

30. Despite JRS's demand, JRS is informed and believes that Smith will continue to sell and offer for sale its RAGE R1 Speed Rope on the internet and in stores until it is enjoined from infringement.

## COUNT 1: INFRINGEMENT OF THE '809 PATENT

31. The allegations of the preceding Paragraphs 1-30 are repeated, realleged, and incorporated herein by reference as if fully set forth herein.

32. Defendant, in violation of 35 U.S.C § 271(a), has been and are currently directly infringing, literally or under the doctrine of equivalents, at least Claim 1 of the '809 Patent by making, using, selling, offering to sell, or importing, without license or authority, the RAGE R1 Speed Rope within this Judicial District or elsewhere in the United States.

33. Claim 1 of the '809 Patent recites as follows:

> 1. A jump rope, comprising:
>    a) a pair of handles each comprising:
>       i) a shaft rotatably journaled in at least one bearing element;
>       ii) a handle adapted to retain said shaft rotatably journaled in said at least one bearing element;
>       iii) a blade element coupled to said shaft, said blade element extending axially from said shaft a distance outward from said handle;
>       iv) a ball element pivotally coupled within an aperture of said blade element a distance from said handle; and
>    b) a cable element having one of a pair opposed ends coupled to said ball element.

34. JRS is informed and believed that Smith's RAGE R1 Speed Rope is a jump rope comprising a pair of handles each comprising a shaft rotatably journaled in at least one bearing element, a handle adapted to retain said shaft rotatably journaled in said at least one bearing element, a blade element coupled to said shaft, said blade element extending axially from said

shaft a distance outward from said handle, with a ball element pivotally coupled within an aperture of said blade element a distance from said handle; and a cable element having one of a pair opposed ends coupled to said ball element.

35. Defendant's actions as alleged herein are without right, license, or permission under the '809 Patent from JRS.

36. JRS is informed and believes that Defendant has willfully, deliberately, and intentionally infringed the '809 Patent.

37. JRS is informed and believes that Defendant will continue to infringe the '809 Patent unless and until they are enjoined by this Court.

38. Defendant, by way of its infringing activities, have caused and continue to cause JRS to suffer damages in an amount to be determined, and have caused and are causing JRS irreparable harm. JRS has no adequate remedy at law against Defendant's acts of infringement and, unless Defendant is enjoined from their infringement of the '809 Patent, JRS will continue to suffer irreparable harm.

39. JRS is entitled to recover from Defendant the damages at least in an amount adequate to compensate for such infringement, which amount has yet to be determined, together with interest and costs fixed by the Court.

### COUNT 2: INFRINGEMENT OF THE '208 PATENT

40. The allegations of the preceding Paragraphs 1-39 are repeated, realleged, and incorporated herein by reference as if fully set forth herein.

41. Defendant, in violation of 35 U.S.C § 271(a), have been and are currently directly infringing, literally or under the doctrine of equivalents, at least Claim 1 of the '208 Patent by

making, using, selling, offering to sell, or importing, without license or authority, the RAGE R1 Speed Rope within this Judicial District or elsewhere in the United States.

42. Claim 1 of the '208 Patent recites as follows:

> 1. A handle, comprising:
>    a) a handle which retains within a shaft rotatably journaled in at least one bearing element;
>    b) a first shaft end extending axially outward of said handle, wherein said first shaft end comprises a blade element which bounds an aperture element at a distance from said handle; and
>    c) a ball element pivotally coupled within said aperture element, said ball element adapted to couple to a cable element.

43. JRS is informed and believed that Smith's RAGE R1 Speed Rope contains a handle which retains within a shaft rotatably journaled in at least one bearing element, a first shaft end extending axially outward of said handle, wherein said first shaft end comprises a blade element which bounds an aperture element at a distance from said handle; and a ball element pivotally coupled within said aperture element, said ball element adapted to couple to a cable element.

44. Defendant's actions as alleged herein are without right, license, or permission under the '208 Patent from JRS.

45. JRS is informed and believes that Defendant has willfully, deliberately, and intentionally infringed the '208 Patent.

46. JRS is informed and believes that Defendant will continue to infringe the '208 Patent unless and until they are enjoined by this Court.

47. Defendant, by way of its infringing activities, have caused and continue to cause JRS to suffer damages in an amount to be determined, and have caused and are causing JRS irreparable harm. JRS has no adequate remedy at law against Defendant's acts of infringement

and, unless Defendant is enjoined from their infringement of the '208 Patent, JRS will continue to suffer irreparable harm.

48. JRS is entitled to recover from Defendant the damages at least in an amount adequate to compensate for such infringement, which amount has yet to be determined, together with interest and costs fixed by the Court.

## COUNT 3: CONVERSION

49. JRS repeats and incorporates by reference the allegations set forth in Paragraphs 1-48 above.

50. JRS has ownership of and right of immediate possession to JRS's property, including but not limited to, Mr. Borth's die for manufacturing jump rope handles.

51. Defendant has exercised dominion and/or ownership over said property through its actions described above, in addition to other acts yet to be discovered, and has possession of said property.

52. Defendant's exercise of dominion and control over said property is wrongful.

53. JRS did not authorize Defendant's actions.

54. To date, Defendant has failed to return said property to JRS.

55. As a result of the Defendant's conversion of JRS property, JRS has been damaged, and will continue to be damaged, in an amount to be proven at trial.

56. JRS is entitled to return of all property in the possession of Defendant or other third-parties.

## PRAYER FOR RELIEF

**WHEREFORE**, JRS respectfully requests the following relief:

A. A judgment that Defendants have directly infringed the '809 Patent and the '208 Patent;

B. A preliminary and permanent injunction restraining and enjoining Defendant and its officers, agents, employees, affiliates, and all others acting in concert or privity with any of them from infringing, inducing the infringement of, or contributing to the infringement of the '809 Patent and the '208 Patent;

C. An award of damages to JRS arising from Defendant's past and continuing infringement, inducement of infringement, and contributory infringement up until the date Defendants are finally and permanently enjoined from further infringement, including compensatory damages;

D. A determination that Defendant's infringement of the '809 Patent and the '208 Patent has been willful, and an award of treble damages under 35 U.S.C § 284;

E. A determination that this is an exceptional case and awarding JRS's attorney fees under 35 U.S.C § 285;

F. An order requiring Defendant to return JRS's physical property;

G. And order awarding JRS up to trebled damages and attorney fees, and such other and further relief as this Court may deem proper for Defendant's conversion of JRS's property;

H. An order awarding JRS costs and expenses in this action;

I. An order awarding JRS pre- and post-judgment interest on its damages; and

J. Such other and further relief in law or in equity as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule Thirty-Eight of the Federal Rules of Civil Procedure, JRS requests a trial by jury of any and all issues so triable.

Respectfully submitted,

Dated: July 16, 2016

LIMPUS + LIMPUS, PC

s/ Christopher L. Limpus
Christopher L. Limpus
7723 Arlington Drive
Boulder, CO 80303
Tele: (303) 731-9540
Email: chris@limpuslaw.com

Attorney for Plaintiff